# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# VICTORIA DIVISION

| | |
|---|---|
| PAUL HRANITZKY,<br><br>     Plaintiff,<br>v.<br><br>SYNCHRONY BANK, TRANS UNION, LLC, EQUIFAX, INC., AND EXPERIAN INFORMATION SOLUTIONS, INC.<br>     Defendants. | Case No. **6:24-cv-00043**<br><br>MEMORANDUM OF LAW IN SUPPORT OF MOTION REQUESTING DEFAULT JUDGMENT AGAINST SYNCHRONY BANK |

NOW COMES Plaintiff, PAUL HRANITZKY ("Plaintiff"), by and through his attorneys, and pursuant to Federal Rule of Civil Procedure 55(b), respectfully presents this Memorandum of Law in Support of the Motion Requesting Default Judgment against Defendant, SYNCHRONY BANK ("SYNCHRONY"), submitted to this Court on March 10, 2025 (*See* Doc. No. 26) and entered by this Court on March 25, 2025 (*See* Doc. No. 29).

### I. INTRODUCTION

On November 10, 2024, Plaintiff commenced this action by filing the Complaint against Synchrony Bank, Trans Union, LLC, Equifax, Inc. and Experian Information Solutions, Inc. alleging violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA") *See* Doc. No. 3, ¶ 1.

On November 15, 2024, a copy of the Complaint, Summons in a Civil Action, Civil Cover Sheet, and other documents filed with the Court, were served by Kevin Pomeroy, 2773 Misty Oaks Drive, South Jordan, UT 84095. *See* Docket No. 7

Pursuant to Federal Rule of Civil Procedure 12(a)(1)(A), Synchrony was required to serve its answer, or otherwise plead, to the Complaint by December 6, 2025.

As of this day, Defendant has failed to defend itself against Plaintiff's claims in the instant case and is in default. Accordingly, and for the reasons argued below, judgment against Synchrony and in favor of Plaintiff is the appropriate remedy.

II.     **STATEMENT OF FACTS**

Defendant, SYNCHRONY, is a nationally chartered bank and is a "person" as defined by 47 U.S.C. §153 (39). *See* Doc. No. 3, ¶ 4-5. On or about November 3, 2020, Plaintiff and SYNCHRONY settled an account ending in 8474 (the "Account") for $1,834.00. *See* Doc. No. 3, ¶ 27. Per the terms of the agreement, Plaintiff made consecutive payments from November 16, 2020 until October 19, 2021 totaling one thousand eight hundred thirty-four dollars ($1,834.00) and thereby satisfied the terms of the settlement. *See* Doc. No. 3, ¶ 28. However, despite his performance under the terms of the agreement, Plaintiff found that Defendant SYNCHRONY reported inaccurate information regarding the Account to the CRAs when he reviewed his credit report in April 2024 and again in July of 2024. *See* Doc.

No. 3, ¶29-30, 39-40. Specifically, the account was reporting an inaccurate status of "Collection/Charge-off" and a balance of $1,222.00. *See* Doc. No. 3, ¶29-30, 39-40.

Plaintiff disputed the inaccurate information with all three CRAs around April 29, 2024 in letters mailed to the three CRA Defendants through the United States Postal Service ("USPS") with tracking. *See* Doc. No. 3, ¶ 33. Each letter contained proof of the inaccuracy. *See* Doc. No. 3, ¶ 34. Plaintiff has confirmation that all three letters were delivered to each CRA on or around May 7, 2024. *See* Doc. No. 3, ¶ 35. Per the duties required of a CRA under 15 U.S.C. 1681(i), each CRA Defendant would have notified Synchrony of Plaintiff's dispute within five days of receiving Plaintiff's dispute letter(s). However, despite Plaintiff's performance under the agreement between Plaintiff and Synchrony and despite Plaintiff's disputes, Plaintiff found the underlying account unchanged on his credit reports with the CRAs when he reviewed his credit on July 8, 2024. *See* Doc. No. 3, ¶ 39.

Plaintiff brought this present case as a result of the continued inaccurate reporting of the account because the continued reporting of the inaccuracy could only be the result of a complete failure of all four defendants to conduct a reasonable investigation of Plaintiff's dispute and correct the inaccuracy. By failing to comply with its statutory duties, Defendant has harmed Plaintiff by the loss of the ability to purchase and benefit from credit, and mental and emotional distress. *See* Doc. No. 3, ¶ 47 – 49.

III. **ARGUMENT**

**A. Legal Standard for Default Judgment**

Rule 55 of the Federal Rules of Civil Procedure "contemplates a two-step process in obtaining a default judgment against a defendant who has failed to plead or otherwise defend."

*DT Fashion LLC v. Cline*, No. 2:16-CV-117, 2018 WL 542268 at *2 (S.D. Ohio Jan. 24, 2018). First, "[a] plaintiff must…request an entry of default from the Clerk of the Courts." *Id*. (citing Fed. R. Civ. P. 55(a)). Second, "[u]pon the Clerk's entry of default, 'the complaint's factual allegations regarding liability are taken as true, while allegations regarding the amount of damages must be proven.'" *Id*., citing *United States v Parker-Billingsley*, No. 3:14-cv-307, 2015 WL 4539843, at *1 (S.D. Ohio Feb. 10, 2015); see also *Bd. of Trustees of Ohio Laborers' Fringe Benefits Programs v. Dan Ray Constr*., No. 2:17-cv-00180, 2018 WL 2435184, at *1 (S.D. Ohio May 30, 2018) ("When ruling on a motion for default judgment, a plaintiff's well-pleaded allegations as to the defendant's liability are normally accepted as true." (citing *Antoine v. Atlas Turner, Inc*., 66 F.3d 105, 110 (6th Cir. 1995)).

**B. Synchrony Violated the Fair Credit Reporting Act.**

"The FCRA imposes a duty upon furnishers of credit information to report accurate information to [CRAs] regarding a consumer's credit." *Bach v. First Union Nat. Bank*, 149 Fed.Appx. 354, 358 (6th Cir. 2005); see also 15 U.S.C. § 1681s–

2(a)(1)(A). Section 1681s-2(b) provides a private right of action to consumers. See *Boggio v. USAA Fed. Sav. Bank*, 696 F.3d 611, 615–16 (6th Cir. 2012). To establish an FCRA claim, a plaintiff must show that: (1) Furnisher was notified by the CRA about the inaccurate information and (2) the furnisher failed to properly act to investigate the inaccurate information. *Chiang v. Verizon New Eng., Inc.*, 595 F.3d 26, 35-36 (1st Cir. 2010). Under prong (2), the Plaintiff has the burden to show the (a) furnisher's investigation was unreasonable and (b) the actual inaccuracies could have been detected by the furnisher if it conducted a reasonable investigation. Id.

The facts established in the present case require the imposition of liability under the applicable FCRA standard. Under 15 U.S.C. §1681s-2(b)(1), once notified by the credit reporting agency (CRA), the furnisher must:

(A) conduct an investigation with respect to the disputed information;

(B) review all relevant information provided by the consumer reporting agency;

(C) report the results of the investigation to the consumer reporting agency;

(D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and

(E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation, for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly--(i) modify that item of information; (ii) delete that item of information; or (iii) permanently block the reporting of that item of information. 15 U.S.C. §1681s-2(b)(1)

Furnishers cannot provide any information to CRAs if the furnisher knows or has reasonable cause to believe that the reporting information is inaccurate. *Id*. at 36. See also *Sullivan v. Experian Info. Sols*., No. 16-11719-MLW, 2020 U.S. Dist. LEXIS 192285, at *7 (D. Mass. Oct. 16, 2020). Courts have held that Plaintiff need only to show that the credit report had factual inaccuracies where a jury can conclude the credit report was "sufficiently misleading to trigger the protections of §1681s-2(b)." *Id*. At *9.

The holding in *Chiang* is distinguishable to the case at hand. The Plaintiff in *Chiang* failed to show actual inaccuracies that the Defendant could have found during a reasonable investigation. *Chiang*, 595 F.3d 26 at 38-39. It is clear from the credit report (*See* Doc. No. 3, ¶ 40), after the dispute letter was sent, that Synchrony failed to conduct a reasonable investigation into the dispute and failed to properly report the correct account information. Synchrony furnished inaccurate information regarding Plaintiff's account. The misinformation was in fact inaccurate. Plaintiff

made the timely payments for the account which are in Synchrony's possession. Plaintiff disputed actual inaccurate information to the CRAs providing it with the settlement agreement with Synchrony. *See* Doc. No. 3, ¶ 28, 33-34. The CRAs sent all relevant information to Synchrony to aid it in its investigation. *See* Doc. No. 3, ¶ 36. Months after the dispute letter was sent, Synchrony continued to furnish the same inaccurate information regarding Plaintiff's account. *See* Doc. No. 3, ¶ 41. If Synchrony had conducted a reasonable investigation, it would have found that Plaintiff did make the timely payments which are in Synchrony's possession. Synchrony failed to oblige its statutory duty resulting in harm to Plaintiff. Defendant failed to meaningfully comply with its statutory obligation. Synchrony was in possession of the payments Plaintiff made regarding the account. Therefore, Synchrony violated the FCRA.

### C. Plaintiff is Entitled to Damages Under the FCRA.

The FCRA allows consumers to recover for willful violations of the FCRA, including: all actual damages suffered, statutory damages up to $1,000; punitive damages; and recovery of the consumer's attorney's fees and costs. *See* 15 U.S.C. § 1681n(a). The statute provides no criteria for courts to apply when determining statutory damages, however, it is left to the courts to decide. *Allicon v. Wireless*, No. 11-cv-007-SM, 2012 U.S. Dist. LEXIS 17165, at *12 (D.N.H. Jan. 18, 2012). "[Actual] [d]amages recoverable under the FCRA 'include humiliation or mental

distress, even if the consumer has suffered no out-of-pocket losses' due to a denial of credit." *Bacharach v. Suntrust Mortg., Inc.*, No. CIV.A 12-962, 2015 WL 6442493 at *4 (E.D. La. Oct. 23, 2015), aff'd, 827 F.3d 432 (5th Cir. 2016) (citing *Waddell v. Equifax Info. Servs.*, LLC, No. CV 05-0092 PHX DGC, 2006 WL 2640557 at *4 (D. Ariz. Sept. 14, 2006) (quoting *Stevenson v. TRW Inc.*, 987 F.2d 288, 296 (5th Cir. 1993)).

In the instant matter, Synchrony was in possession of the timely payments Plaintiff made regarding the Account. But, even if it hadn't kept record of the payments Plaintiff had made, it would have been made aware that the account had been paid off by the documentation that Plaintiff included in his dispute letters. Had Synchrony conducted a reasonable investigation, it would have easily found that Plaintiff made the payments, thus, the inaccurate reporting of an unpaid balance and reporting the Account status of "Collection/Charge-off" would have been brought to Synchrony's attention. The fact that Synchrony continued to publish the inaccurate information is sufficient evidence to establish Synchrony's failure to conduct a reasonable investigation into Plaintiff's dispute letters. Synchrony failed to conduct a reasonable investigation as it was statutorily required to do, which resulted in the continued publication of erroneous information affecting Plaintiff's credit worthiness.

### IV. PLAINTIFF'S CLAIM FOR DAMAGES

### A. Plaintiff's Claim for Damages under the FCRA

In the present matter, Plaintiff demands actual damages in the amount of $5,000.00 suffered as a result of Synchrony's conduct, including damages for emotional distress, as fully described in Plaintiff's affidavit. Additionally, Plaintiff demands statutory damages of $1,000.00 for Synchrony's violations of the FCRA.

Moreover, Plaintiff demands punitive damages in the amount to be determined by the Court as Synchrony's conduct amounts to willful noncompliance with the FCRA. Willfulness covers not only knowing violations of the FCRA, but reckless violations as well. *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 48 (2007). To establish willful noncompliance with the FCRA, Plaintiff must prove that the defendant "knowingly and intentionally committed an act in conscious disregard for the rights of others." *In re Croft*, 500 B.R. 823, 846-47 (Bankr. W.D. Tex. 2013). Plaintiff need not show malice or evil motive in order to satisfy 15 U.S.C. § 1681n. *Id.* Rather, reckless disregard of an FCRA requirement is enough to qualify as a willful violation under § 1681n. *Id.*

While "the term reckless is not self-defining," the common law has generally understood it in the sphere of civil liability as conduct in violation of an objective standard; an action entailing "an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Safeco* at 68 (internal citations omitted). Thus, a company subject to the FCRA does not act in reckless disregard of it unless

the action is not only a violation under a reasonable reading of the statute's terms but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless. *Id*. at 69.

In the present matter, Synchrony acted in knowing disregard, or, in the very least, in reckless disregard of its obligations under the FCRA. Concerning Plaintiff specifically, Synchrony's conduct amounts to a willful violation of the FCRA. Synchrony has had ample opportunity to correct its inaccurate reporting of the underlying account and yet has chosen to do nothing. It has failed to even respond to Plaintiff's claims brought in this case. Synchrony's conduct warrants an award of punitive damages in this matter, both to punish Synchrony and to deter it from engaging in the same unlawful conduct in the future.

### B. Attorneys' Fees and Costs

The FCRA allows for the costs of the action and reasonable attorneys' fees as determined by the court. 15 U.S.C. § 1681(n)(c). The general rule for calculating attorneys' fee awards under fee shifting statutes is applicable to attorneys' fees awards under the FCRA. *Edge v. Norfolk Fin. Corp.*, No. 04-12134-DPW, 2005 U.S. Dist. LEXIS 20580, at *5 (D. Mass. Aug. 29, 2005). The starting point for determining reasonable attorneys' fees is the Lodestar method, which is calculated by multiplying the number of hours reasonably expended by the reasonable hourly rate. *Id*. Courts in the First Circuit have held that using a Fee Survey is reasonable

to determine attorney's fees. *Ascion, LLC v. Ruoey Lung Enter. Corp.*, No. 09-11550-GAO, 2014 U.S. Dist. LEXIS 32425, at *6 (D. Mass. Mar. 13, 2014). Exhibit B to the attached Affidavit of Jeffrey Lohman summarizes the reasonable attorney billing prepared pursuant to Lodestar for work which was necessary to vindicate Plaintiff's FCRA claim. It also includes the costs of the action, pursuant to 15 U.S.C. § 1681(n)(a)(1)(A).

Plaintiff seeks an award of attorneys' fees in the amount of $9,202.60 which is comprised of attorney time, paralegal time, and fees spent litigating Plaintiff's FCRA claim. Specifically, Jeffrey Lohman, the managing partner of The Law Offices of Jeffrey Lohman, PLLC, spent 18.7 hours working this case at the discounted rate of $450.00 per hour, and paralegals, spent 4.4 hours working this matter. These rates are deemed reasonable according to the US Consumer Law Attorney Fee Survey Report based on the years of experience and area of law. Further, counsel incurred costs of $405 for filing the complaint and $95 for service of summons upon Defendant.

**WHEREFORE**, Plaintiff Paul Hranitzky, by and through his attorneys, respectfully requests this honorable Court enter judgment in his favor against Defendant, Synchrony as follows:

1. Actual FCRA Damages: $5,000.00

2. Statutory FCRA Damages:  $1,000.00

3. Punitive FCRA Damages: TBD by the Court

4. Attorneys' Fees & Costs: $9,202.60

TOTAL: $15,202.60 (Plus punitive damages)

DATED: April 21, 2025

RESPECTFULLY SUBMITTED,

By: /s/ Jeffrey Lohman
Jeffrey Lohman
Attorney for Plaintiff
AZ Bar No 032315
The Law Offices of Jeffrey Lohman, PLLC
2325 Camelback Road,
Suite 400
Phoenix, AZ 85016
T: (602) 461-7404